**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| GILBERT P. HYATT,<br><br>Plaintiff,<br><br>v.<br><br>JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>Defendant. | Civil Action No. 1:26-cv-03481 |

**COMPLAINT**

Plaintiff Gilbert P. Hyatt, by and through his attorneys Baker & Hostetler LLP, alleges as follows:

**Nature of the Action**

1. This is an action under the Patent Act, 35 U.S.C. § 145, to obtain a patent on patent application serial number 08/461,572 (Dkt. #489). For over three decades, Plaintiff Gilbert P. Hyatt has diligently prosecuted the ’572 Application in the U.S. Patent and Trademark Office (“PTO”), as well as several hundred co-pending applications.

2. Congress has provided a cause of action for an aggrieved patent applicant to bring a civil action under 35 U.S.C. § 145 to obtain *de novo* consideration of his entitlement to a patent. Mr. Hyatt brings this action to obtain a patent in this application.

**Parties**

3. Plaintiff Gilbert P. Hyatt is an engineer, scientist, and inventor who has obtained more than 70 issued patents. Some of his patents and applications cover microcomputer structure, computer memory architecture, incremental processing, illumination devices, display devices, graphics systems, image processing, and sound and speech processing. He is 88 years of age and resides in Clark County, Nevada.

4. Defendant John A. Squires is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office. He has overall responsibility for the administration and operation of the PTO, including the patent examination process. He is named as a defendant in his official capacity only.

**Jurisdiction and Venue**

5. This action arises under the patent laws of the United States. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 35 U.S.C. § 145.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 35 U.S.C. § 145.

7. This Complaint is timely filed in accordance with 35 U.S.C. § 145 and 37 C.F.R. § 90.3(a)(3)(i).

8. This matter has not been appealed to the United States Court of Appeals for the Federal Circuit.

**The ’572 Application**

9. Mr. Hyatt is the owner and inventor of U.S. Patent Application Serial No. 08/461,572 (Dkt. # 489) (the “’572 Application”).

10. The ’572 Application has the benefit of the filing date of U.S. Patent Application Serial No. 06/504,691 (Dkt. #193) filed on June 15, 1983.

11. The ’572 Application includes the following 280 claims: 98–237, 239–254, 256–263, 265–293, 296–301, 303–309, 311, 313, 315–321, 323–327, 329–374, 376–378, 380–383, 386–389, 392, 393 and 397 (the “Subject Claims”).

12. Mr. Hyatt is seeking issuance of a patent on the Subject Claims, but not on any other claims in the ’572 Application.

13. The Subject Claims in the ’572 Application are generally directed to the following subject matter:

a. controlling a production line robot, a transfer line robot, or a remotely piloted vehicle, based on information generated by extrapolation or incremental

processing of all of (i) attitude information from both a gyro and a compass, (ii) database information stored in a charge storage memory, and (iii) ultrasound, video camera, or infrared information, but without recitation of satellite or inertial navigation; or

b. communicating information to a data link and performing various specified operations, both based on iterative information generated based on all of (i) sensor information, (ii) inertial navigation information, (iii) information communicated from a data link, and (iv) charges or information accessed from a memory using database memory management operations, but without recitation of camera, video, radar, or graphics.

These lines of demarcation are further evidenced by the specific limitations of each Subject Claim. Each claim of the Subject Claims of the instant application has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications.

14. Mr. Hyatt filed the '572 Application on June 2, 1995. As such, this application is governed by the Transitional Rules under the Uruguay Round Agreements Act, Public Law No. 103-465 (1994) ("URAA"), including a provision the PTO implemented in 37 C.F.R. § 1.129(a) ("Rule 129(a)"), that limits to two the number of submissions that an applicant can file, to require limited further examination.

15. The '572 Application is deemed "special" under the PTO rules and must be "advanced out of turn." 37 C.F.R. § 1.102(a). It "continue[s] to be special throughout its entire course of prosecution in the [PTO], including appeal, if any, to the [Board]." MPEP § 708.01.

16. Mr. Hyatt has never made a dilatory filing in prosecuting the '572 Application. In contrast, the PTO suspended prosecution on at least six occasions (5/11/2007, 3/17/2008, 12/30/2008, 9/24/2009, 4/19/2010, and 9/23/2011), and entered new grounds of rejections at least as late as April 2022.

17. In September 1995, the PTO sent a final office action rejecting all claims, and that same month, Mr. Hyatt filed a preliminary amendment.

18. In December 1995, Mr. Hyatt filed a petition to withdraw the office action, which the PTO granted in February 1996.

19. In June 1996, the PTO sent a non-final office action rejecting all claims.

20. In November 1996, Mr. Hyatt timely responded, and in December 1996, Mr. Hyatt filed a supplemental amendment.

21. In February 1997, the PTO sent a notice of non-responsiveness.

22. In March 1997, Mr. Hyatt timely responded, and in January 1998, Mr. Hyatt filed a supplemental amendment.

23. For the nearly four years after Mr. Hyatt's March 1997 response, the PTO did not take any action on the merits. In February 2001, the PTO sent a non-final office action.

24. In August 2001, Mr. Hyatt timely responded, and in February 2002 and April 2003, Mr. Hyatt filed supplemental amendments.

25. The PTO did not take any action on the merits for more than twelve years after Mr. Hyatt's August 2001 response. Instead, the PTO suspended examination on six different occasions and did not decide Mr. Hyatt's repeated petitions for action.

26. In October 2013, the PTO sent a so-called "Requirement" action that, among other things, purported to require Mr. Hyatt to select 600 claims for examination in applications of the "450 Family" (each of which have the same disclosure as the disclosure in the '572 Application) and to identify any earlier embodiment that falls within the scope of any selected claim that Mr. Hyatt believed was entitled to a priority date earlier than October 15, 1991, or to provide a simple statement that the claim was described in the written description of parent application Serial No. 07/774,159 (Dkt. #344), filed on that date, excluding documents incorporated by reference.

27. In late 2013, the PTO sent similar Requirements in nearly all of Mr. Hyatt's applications.

28. In January 2014, Mr. Hyatt timely responded to the Requirement.

29. For more than two years, the PTO did not take any action on the merits. In April 2016, the PTO sent a non-final office action rejecting all claims. The PTO acknowledged that Mr. Hyatt's response was "bona fide" and "fully responsive."

30. In October 2016, Mr. Hyatt timely responded.

31. For another period, this time more than two and a half years, the PTO did not take any action on the merits. In April 2019, the PTO sent a non-final office action rejecting all claims.

32. In October 2019, Mr. Hyatt timely responded.

33. In December 2019, the PTO sent a final office action rejecting all claims.

34. In June 2020, Mr. Hyatt made a timely submission under Rule 129(a) removing the finality of the office action.

35. In November 2020, the PTO sent a final office action rejecting all claims.

36. In April 2021, Mr. Hyatt made another submission under Rule 129(a) removing the finality of the office action.

37. In April 2022, the PTO sent a final office action rejecting all claims.

38. In September 2022, Mr. Hyatt timely filed a notice of appeal, and in February 2023, Mr. Hyatt timely filed his appeal brief and a claim-cancellation amendment, which the PTO entered in December 2023.

39. In January 2024, the PTO sent an examiner's answer.

40. The PTO's failure to send an examiner's answer within six months violated the commitment it made to this Court in *Hyatt v. PTO*, No. 14-cv-01300-TSE-TCB, ECF 156 (E.D. Va.).

41. In June 2024, Mr. Hyatt filed a reply brief.

42. The PTO did not take any action on the merits for a period of more than two years. On August 17, 2026, the Board sent its decision affirming the rejections of each of the Subject Claims on at least one ground of rejection.

**The Written Description Rejections**

43. The PTO rejected Subject Claims 216, 247, 334, 342, and 343 for alleged lack of written description within the meaning of pre-AIA 35 U.S.C. § 112, first paragraph.

44. The disclosure of the '572 Application describes the claimed subject matter of Subject Claims 216, 247, 334, 342, and 343 in such manner that a person of ordinary skill in the relevant field of art would understand that Mr. Hyatt had possession of the invention claimed in that Subject Claim as of the '572 Application's effective filing date.

45. The rejection of Subject Claims 216, 247, 334, 342, and 343 under pre-AIA 35 U.S.C. § 112, for alleged lack of written description under pre-AIA 35 U.S.C. § 112, first paragraph, is erroneous.

**The Prosecution Laches Rejection**

46. The PTO rejected the Subject Claims and held the '572 Application entirely forfeited under the equitable doctrine of prosecution laches.

47. The rejection for prosecution laches is erroneous.

48. The prosecution laches rejection is erroneous because prosecution laches is not a valid ground of rejection under the Patent Act, particularly for the '572 Application, which is subject to the two-submission limit of the URAA Transitional Rules.

49. The prosecution laches rejection is erroneous because Mr. Hyatt did not delay prosecution.

50. The prosecution laches rejection is erroneous because any delay in the prosecution is attributable to the actions or inaction of the PTO.

51. The prosecution laches rejection is erroneous because any delay in prosecution fairly attributed to Mr. Hyatt is not unreasonable and not unexplained.

52. The prosecution laches rejection is erroneous because Mr. Hyatt's prosecution actions did not constitute an egregious misuse of the statutory patent system.

53. The prosecution laches rejection is erroneous because the PTO failed to warn Mr. Hyatt in advance of any specific actions or inaction of the risk of forfeiture of his rights

under the Patent Act in or as to the ’572 Application and failed to warn Mr. Hyatt of what specific actions he should take or not take to avoid forfeiture.

54. The prosecution laches rejection is erroneous because the PTO failed to make a sufficient showing of intervening rights.

55. The prosecution laches rejection is erroneous because the PTO unreasonably delayed in asserting prosecution laches after decades of prosecution activity by Mr. Hyatt, prejudicing Mr. Hyatt, who has invested significant amounts of time and money in the prosecution of the ’572 Application.

56. The prosecution laches rejection is erroneous because the PTO has unclean hands.

57. The prosecution laches rejection is erroneous because Mr. Hyatt complied with any and all applicable prosecution laches warnings.

58. Mr. Hyatt intends to present good faith arguments to distinguish existing case law respecting prosecution laches and, as necessary, to seek reversal of existing law to the extent that existing law is inconsistent with the allegations concerning the Prosecution Laches rejection.

**The Undue Multiplicity Rejection**

59. The PTO rejected all of the Subject Claims under pre-AIA 35 U.S.C. § 112, second paragraph, as allegedly failing to distinctly claim the subject matter that Mr. Hyatt regards as the invention under the doctrine of undue multiplicity.

60. Each of the Subject Claims informs with reasonable certainty about the scope of each claim.

61. Each of the Subject Claims distinctly claims the subject matter that Mr. Hyatt regards as the invention.

62. The Subject Claims are distinguished from all claims that Mr. Hyatt seeks to pursue in all of his other applications because each of the Subject Claims are generally directed to the subject matter identified in paragraph 13 above, whereas Mr. Hyatt does not

seek to patent any claims that meet the same descriptions in any other of his applications. Each of the Subject Claims contains further specific limitations. Each of the Subject Claims has ascertainable differences in scope from the claims of Mr. Hyatt's co-pending applications. Each of the Subject Claims of the '572 Application has ascertainable differences in scope from each other.

63. The rejection of the Subject Claims as unduly multiplied under pre-AIA 35 U.S.C. § 112, second paragraph, is erroneous.

**Objections**

64. In addition to rejecting the Subject Claims, the PTO has objected to the specification and drawings.

65. All objections to the specification and drawings are erroneous because the specification and drawings comply with the requirements of law.

**Count I: Issuance of a Patent**

66. The above paragraphs are hereby incorporated by reference as if set forth fully herein.

67. Patent Act Section 145 provides a cause of action for a patent applicant dissatisfied with a decision of the Patent Trial and Appeal Board to obtain a judgment that the "applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Patent Trial and Appeal Board." 35 U.S.C. § 145.

68. Each of the Subject Claims of the '572 Application was involved in the August 17, 2026, decision of the Patent Trial and Appeal Board.

69. Each of the Subject Claims of the '572 Application is patentable.

70. Each of the Subject Claims of the '572 Application satisfies all applicable legal requirements for issuance of a patent.

71. Mr. Hyatt is entitled to receive a patent on the Subject Claims in the '572 Application.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully asks that this Court enter Judgment in his favor and that he be granted the following relief:

A. A decree that Mr. Hyatt is entitled to receive a patent for the ’572 Application on the Subject Claims;

B. A decree that the rejections of the Subject Claims of the ’572 Application are erroneous;

C. A decree authorizing the Director of the United States Patent and Trademark Office to issue a patent for the subject matter claimed in the Subject Claims of the ’572 Application;

D. A decree that the specification and drawings of the ’572 Application comply with the requirements of law; and

E. Such other and further relief as the Court may deem just and proper.

Dated: October 19, 2026

Respectfully submitted,

/s/ Renee M. Knudsen
MARK W. DELAQUIL (VA Bar No. 68088)
ANDREW M. GROSSMAN*
RENEE M. KNUDSEN (VA Bar No. 90846)
BAKER & HOSTETLER LLP
1717 K Street NW, Suite 800
Washington, D.C. 20006
(202) 861-1527
agrossman@bakerlaw.com
mdelaquil@bakerlaw.com
rknudsen@bakerlaw.com

*Attorneys for Gilbert P. Hyatt*

* Application for admission *pro hac vice* forthcoming